Jeffrey Willis (#004870)
Christopher H. Bayley (#010764)
Jonathan Saffer (#022004)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, Arizona 85004-2202
Telephone: (602) 382-6000
Email: jwillis@swlaw.com
cbayley@swlaw.com
jmsaffer@swlaw.com
Attorneys for First Magnus Capital, Inc.

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re:<br><br>FIRST MAGNUS FINANCIAL CORPORATION,<br><br>          Debtor.<br><br>―――――――――――――<br><br>JENNIFER BINFORD, SHEILA HART, SUSAN HOWARD, JENNIFER HURTADO, SHEILA LOEBS, KELLY PLUMMER, TIRZAH ROLLE and TWANA WRIGHT on behalf of themselves and all others similarly situated,<br>          Plaintiffs,<br>vs.<br>FIRST MAGNUS FINANCIAL CORPORATION and FIRST MAGNUS CAPITAL, INC.,<br>          Defendants. | In Proceedings Under Chapter 11<br><br>Case No. 07-01578-TUC-JMM<br><br>ADV. No. 07-0060<br><br>**FIRST MAGNUS CAPITAL INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND RELATED RELIEF** |

Defendant First Magnus Capital, Inc. ("FMCI") hereby opposes Plaintiffs' Motion for Class Certification and Related Relief ("Certification Motion"). The Certification

99999.9JWS\SAFFERJM\TUX\ 483385

Motion should be denied because, as explained below, it is (1) premature, (2) insufficiently supported by competent evidence, and (3) seeks a deficient notice.

This Opposition is supported by the following Memorandum of Points and Authorities, as well as the entire record in this matter, which are incorporated by reference.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **I. INTRODUCTION AND OVERVIEW**

Plaintiffs seek class certification of their WARN Act claims, *see* 29 U.S.C. §§ 2101-2109 (2006), against First Magnus Financial Corporation ("FMFC") and FMCI. Class certification is premature at this stage of the bankruptcy proceedings and is unwarranted because there are too many unresolved issues regarding certification. Plaintiffs argue that the issues are simple, a WARN Act violation was obvious, and all former employees are identically situated: this is simply untrue. There are many complicated issues in this case, some of which present triable issues of fact, and the former FMFC employees have widely varying circumstances that affect the outcome of their individual claims. At this time, whether the case fulfills the substantive certification requirements is an open question not resolvable through this Motion. Threshold questions as to whether some or any employees were covered by the WARN Act could also moot certification or eliminate any common class issues. A full evidentiary hearing is needed to resolve the threshold certification issues. Therefore, this Court should deny the Certification Motion.

Of equal significance is the pending plan of liquidation submitted by the debtor. With the hearing on plan confirmation weeks away, this Court should defer ruling on class certification to allow those parties with the real stake in this matter, such as unsecured creditors and the proposed Litigation Trustee, an opportunity to intervene. At a minimum,

99999.9JWS\SAFFERJM\TUX\ 483385

- 2 -

1 no class should be certified until the plan is approved and the Litigation Trustee has an opportunity to weigh in on this matter.

## II. LEGAL ARGUMENT

### A. The Court Should Delay Any Decision On Class Certification Until All Affected Parties Have Notice of These Proceedings and a Litigation Trustee Is Appointed.

The hearing on plan confirmation in the bankruptcy is currently set to commence February 7, 2008, only weeks away. Based on Plaintiffs' Response to FMFC and FMCI's Motions to Dismiss, it is clear that they expect that this action will have significant bearing on the administration and liquidation of the debtor's estate. Yet it is unclear whether Plaintiffs have made any effort to provide notice of this action or the opportunity to intervene to interested parties in the Bankruptcy, including the Unsecured Creditors Committee. Their interest is obvious—general unsecured creditors stand to lose the most if Plaintiffs succeed in obtaining a priority claim in the Bankruptcy Case for up to sixty days' additional wages. In some respects, unsecured creditors should be considered the real parties in interest in this matter, as opposed to FMFC, which really does not have a stake in the litigation as its current plan simply calls for a liquidation of assets. Thus, prior to any determination on class certification, the Court should require Plaintiffs to provide official notice of this action to any interested party in the Bankruptcy that may wish to intervene, including, at a minimum, the Unsecured Creditors' Committee.[1]

There is an even more compelling reason to defer the Certification Motion. FMFC's plan calls for the appointment of a Litigation Trustee to prosecute or defend litigation in which the debtor is currently a stakeholder. If the plan is confirmed, the Litigation Trustee would presumably assume FMFC's defense in this action. Whether the

---

[1] The Certification Motion does not appear to include a service list, so FMCI is uncertain as to whether Plaintiffs served the Unsecured Creditors Committee with a copy. Plaintiffs did provide notice of the hearing scheduled for January 9, 2008 to the Unsecured Creditors' Committee. Regardless, there are other interested parties in the Bankruptcy Case that should be provided with notice and the opportunity to intervene.

99999.9JWS\SAFFERJM\TUX\ 483385

- 3 -

plan will be confirmed, or assuming it is, who will be appointed as the Litigation Trustee and what course they will choose to pursue on behalf of the estate, remain uncertain at the present time. Given the dynamics of this bankruptcy estate, the Liquidation Trustee may choose not to carry the standard for the defense in this matter, but instead leave that to lower priority creditors with a direct stake in the outcome. Therefore, this Court should delay consideration of the Certification Motion until post-confirmation, to allow the Litigation Trustee the opportunity to make informed decisions.

### B. The Putative Class Is Defective.

As established immediately below, the proposed class definition is defective because the class is overbroad and not presently ascertainable without determining ultimate issues of liability. An improperly defined class should not be certified. *See In re Tableware Antitrust Litig.*, 241 F.R.D. 644, 650 (N.D. Cal. 2007) (requiring proof that the class exists and can be "defined with reasonable specificity"); *Bakalar v. Vavra*, 237 F.R.D. 59, 64 (S.D.N.Y. 2006) (stating that it must be "administratively feasible for a court to determine whether a particular individual is a member" of the class "without engaging in numerous fact-intensive inquiries"). Plaintiffs seek to certify the following class:

> former employees of Defendants . . . , who (i) who [sic] worked at or reported to one of Defendants' Facilities and were terminated without cause on or about August 16, 2007, within 30 days of August 16, 2007, or in anticipation of, or as the foreseeable consequence of, the mass layoff or plant closing ordered by Defendants on or about August 16, 2007, and who are affected employees, within the meaning of 29 U.S.C. § 2101(a)(5), and (ii) who have not filed a timely opt-out of the class . . . .

*See* Certification Motion at 1-2. Plaintiffs offer only meager supporting evidence for their Certification Motion, and an evidentiary hearing on threshold issues at the heart of this case is needed to determine who is in the class.

1. <u>The Proposed Class Is Overbroad Because It Includes Employees From Sites That Are Not Covered by the WARN Act.</u>

The proposed class is overbroad. The initial limitation within the proposed class is of former employees who worked at one of Defendants' "Facilities," as it is defined by the WARN Act. *See* Certification Motion at 2. A plant closing may occur at either an employment site or a facility, but mass layoffs only occur at the "single site of employment." *See* 29 U.S.C. §§ 2101(a)(2)-(3). The Amended Complaint includes both plant closings and mass layoffs. *See* Amended Complaint at ¶¶ 1, 16-17, 25, 35-39. Thus, Plaintiffs use the wrong term and should use the more relevant "single site of employment" that applies to both plant closings and mass layoffs. The complex definition of "single site of employment" applies to various configurations of buildings or parts of buildings, including among others, a "single location," "a group of contiguous locations," "separate buildings," and "sites of employment within a single building." *See* 20 C.F.R. § 639.3(i).

Not all "single sites of employment" are subject to the WARN Act's requirements. Under the "plant closing" prong of the WARN Act, at least fifty employees must be laid off at each employment site. 29 U.S.C. § 2101(a)(2). Under the "mass layoff" prong, there must still be at least fifty employees laid off, but that number excludes employees laid off as part of a plant closing. *Id.* § 2101(a)(3). For instance, at FMFC's headquarters, which remains partially open, if there is a plant closing of a distinct "operating unit" within a site, the layoffs from that unit are not aggregated with any remaining layoffs at that site for purposes of the mass layoff minimums. *See Id.* § 2101(a)(3)(A). Clearly not every FMFC employment site qualifies under the WARN Act, as there were approximately 6000 employees working at 335 branches, averaging only 18 per site. *See*

Declaration of Gurpreet S. Jaggi at ¶¶ 5, 24 (Docket #6). The proposed class therefore includes sites not covered by the WARN Act. In short, "single site of employment" is the relevant WARN Act criterion, but it is too complex to permit ready identification of the putative class based simply on Plaintiffs' Motion.

### 2. Class Membership Is Not Presently Ascertainable With Objective Criteria.

There is an implied requirement that a proposed class allow the court to presently ascertain the class members with reference to objective criteria. *See Chiang v. Veneman*, 385 F.3d 256, 271 (3d Cir. 2004); *Evans v. IAC/Interactive Corp.*, 244 F.R.D. 568, 574-75 (C.D. Cal. 2007). This requirement essentially prohibits a proposed class that requires a court to resolve ultimate issues at the heart of the case, *see Lau v. Arrow Financial Servs., LLC*, 245 F.R.D. 620, 623-24 (N.D. Ill. 2007); *Sanneman v. Chrysler Corp.*, 191 F.R.D. 441, 446 (E.D. Pa. 2000), or conduct "numerous fact-intensive inquiries," *see Bakalar*, 237 F.R.D. at 64. The Supreme Court agrees with this rule, prohibiting a plaintiff from "secur[ing] the benefits of a class action without first satisfying the requirements for it" and "obtain[ing] a determination on the merits of the claims . . . without any assurance that a class action may be maintained." *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974).

Additionally, damages class actions under Rule 23(b)(3)—which is what Plaintiffs seek here—require identification of class members to notify them of their right to opt-out of the class. *See* Fed. R. Civ. P. 23(c)(1)(B); *Amchem Prods., Inc. v. Windsor*, 521 U.S 591, 614-17 (1997). Failure to notify class members raises due process concerns as they would be limited by the outcome of this case under the doctrine of res judicata. *See Eisen*, 417 U.S. at 173-74. An unascertainable class may violate class members' due process rights.

The proposed class requires this Court to engage prematurely in substantive consideration of the ultimate liability issues in this case just to determine the class

members. The Court must decide (1) if layoffs were a foreseeable consequence of an event, (2) if there was a mass layoff or plant closing, and (3) whether any of the employees are individually exempted from the definition of "affected employees." These are factual and legal conclusions of the claims at the heart of this case. Foreseeability of layoffs is a factual determination critical to the unforeseeable business circumstances exception. *See* 29 U.S.C. § 2102(b)(2)(A); 20 C.F.R. § 639.9(b). "Mass layoff" and "plant closing" are terms that require the Court to determine how many "single sites of employment" exist, whether there were a requisite number of employees and layoffs at any site, and whether any distinct operating units were entirely shut down within a site. *See* 29 U.S.C. § 2101(a)(2)-(3); 20 C.F.R. § 639.3(b), (c), and (i). The definition of "affected employees" reiterates the mass layoff or plant closing determination but further excludes part-time employees and those who were terminated for cause, voluntarily departed, or retired. *See* 29 U.S.C. § 2101(a)(5), (6), and (8). Thus, the Certification Motion essentially asks the Court to resolve many of the substantive issues without the benefit of any evidence.

In reality, there is no ascertainable way to define the putative class without resolving, at the class certification stage, which employment sites and which employees are covered by the WARN Act. These threshold questions could moot any need for a class action or reduce the putative class size significantly, but Plaintiffs offer meager evidence on these issues. The Court should be extremely hesitant to certify a class because class members could be deprived of their due process right to opt out of the class.

### C. <u>The Representative Plaintiffs Do Not Satisfy the Typicality and Adequacy of Representation Prerequisites for Potential Subclasses.</u>

The proposed class representatives' claims are not typical of all putative class members. Unnamed parties could be subject to different defenses raised by FMCI than the proposed class representatives, and the class may include subclasses that have no named representative. Similarly, Plaintiffs cannot adequately represent all putative class

99999.9JWS\SAFFERJM\TUX\ 483385

- 7 -

members without a representative for each potential subclass because the subclasses' interests conflict with each other.

Class representatives' claims must be typical of the class, and representatives must adequately represent class members. *See* Fed. R. Civ. P. 23(a)(3)-(4). To establish typicality, the class representative's claims must be "reasonably co-extensive with those of absent class members." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). To establish adequacy of representation, Plaintiffs must prove that representative plaintiffs "do not have conflicts of interest with the proposed class." *Dukes v. Wal-Mart, Inc.*, Nos. 04-16688 & 04-16720, 2007 WL 4303055, at *11 (9th Cir. Dec. 11, 2007). When class members have claims of different strengths, there must be class representatives who can represent each group of plaintiffs. *See Amchem*, 521 U.S. at 627-28; *Hanlon*, 150 F.3d at 1020. Class representatives must also be capable of locating evidence and understanding the particular details of unnamed plaintiffs' cases. *See Alberts v. Nash Finch Co.*, 245 F.R.D. 399, 408-09 (D. Minn. 2007) (denying WARN Act class certification in part for employees who worked at out-of-state stores the representative plaintiff had never visited). When class members have unaligned interests, different goals, or claims of varying strengths, a class action cannot be certified without creating subclasses. *See Amchem*, 521 U.S. at 627-28. Similarly, each subclass of the main class must separately fulfill the Rule 23 requirements. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001).

In the instant case, each "single site of employment" constitutes a potential subclass, and each subclass is entitled to be represented by a named plaintiff from that subclass. Because FMFC is in bankruptcy, each subclass is fighting for priority ahead of unsecured claims, and former employees of each employment site are not equally motivated to prove other employment sites qualify for WARN Act protection. To the contrary, plaintiffs would be motivated to contest WARN Act claims from employees of other sites. Employees of employment sites with stronger WARN Act evidence are less likely to desire settlement or contest individual employee exclusions than employees with

weaker evidence, and the proposed class representatives must typically and adequately represent employees with claims of all strengths. *See Presser v. Key Food Stores Coop., Inc.*, 218 F.R.D. 53, 59 (E.D.N.Y. 2003) (denying WARN Act class certification in part because the class representative had not signed a release and was not motivated to pursue the threshold question of whether releases signed by unnamed plaintiffs were void).

If any subclasses are allowed, they should be narrowly circumscribed. *See Hanlon*, 150 F.3d at 1021 (permitting class certification only where class was defined narrowly to exclude certain claims). At most, the named plaintiffs should only be permitted to represent other employees from their own employment sites because representatives who work at a particular site are more knowledgeable and better prepared to find relevant evidence and understand unnamed plaintiffs' issues than representatives who have never set foot at each particular site. *See Alberts*, 245 F.R.D. at 408-09. Former employees who worked in Tucson in particular are likely to belong to several distinct subclasses based on employment sites, possibly more if there were "plant closings" of operating units at the headquarters building, and each subclass would need its own representative plaintiff.

All of the above concerns show that Plaintiffs' claims are atypical and nonrepresentative of the entire putative class. They cannot adequately represent the interests of employees from other employment sites or employees within distinct operating units of larger sites if part of a plant closing. These concerns make certification untenable. At the very least, each employment site requires a separate named class representative who can adequately represent other employees at that site as a subclass.

### D. Plaintiffs Do Not Satisfy Rule 23(b)(3)'s Predominance and Superiority Requirements.

Plaintiffs assert that the putative class should be certified under the Rule 23(b)(3) prong applicable to "damages" class actions. *See* Certification Motion at 12-13. Under Rule 23(b)(3), issues common to all class members must predominate over issues that only affect individual members, and the class action must be "superior to other available

methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The predominance and superiority requirements are "intertwined," because a class action without predominant common issues will not be a superior method of adjudication. *See Brink v. First Credit Res.*, 185 F.R.D. 567, 572 (D. Ariz. 1999). Plaintiffs fail to prove that common issues predominate here or that a class action is superior to other methods of adjudication.

The mere existence of common issues of law or fact does not satisfy the predominance test, which is "far more demanding" than the Rule 23(a) commonality prerequisite. *Amchem*, 521 U.S. at 623-24. The test embodies the goal that a class action will result in greater judicial economy by resolving common issues. *Zinser*, 253 F.3d at 1189.

Here, there are many unique issues. There are threshold issues applicable to each employment site regarding the extent and the number of employees and layoffs at each site. At larger employment sites, such as the headquarters location, there is also the possibility that subgroups exist due to plant closings. Furthermore, there are individual issues for each employee, including whether they were part-time, terminated for cause, voluntarily departed, or retired early. Individual damages are bound to differ, especially considering some employees worked on commission and others on salary. More importantly, the issues tied up with the "single site of employment" would focus the Court's attention on matters only affecting small groups of employees within the putative class. At the least each employment site calls for a separate subclass, but a multiplicity of subclasses suggests that common issues do not predominate over individual and subgroup issues. The prevalence of so many fact-intensive individual issues belies the waste of judicial resources that would be caused by certification. Thus, Plaintiffs have not demonstrated that common issues predominate over individual issues.

Certifying a class action over the WARN Act claims is also not a superior method of adjudicating the claims than permitting putative class members to combine their WARN Act claims with their numerous other individual claims. There are four main

factors relevant to superiority, including (A) individual interests in controlling a separate action, (B) the extent that class members have already litigated their claims, (C) the advantage or disadvantage of litigating in one court, and (D) probable troubles caused by managing a class action. *See* Fed. R. Civ. P. 23(b)(3).

A class action is simply not a superior method of adjudicating the WARN Act claims in this case. In exchange for class certification, individual plaintiffs would sacrifice control of their claims and, especially considering the difficulty in defining the class here, there is significant danger that they would not have the opportunity to timely opt-out of the class. Additionally, the overwhelming need for multiple subclasses in this case hints that a class action would not manageable. *See In re Cendant Corp. Sec. Litig.*, 404 F.3d 173 (3d Cir. 2005) ("[A] class action containing a multitude of subclasses loses many of the benefits of the class action format."); *Kase v. Salomon Smith Barney, Inc.*, 218 F.R.D. 149, 159 n.14 (S.D. Tex. 2003) ("[T]he presences of . . . many subclasses would severely undermine any advantage in terms of efficiency that might be garnered by certifying the class."). Certification would also create enormous administrative problems, particularly because of the ambiguous class. The obvious conclusion of these difficulties is that a class action is not a superior method of adjudicating WARN Act claims.

### E. The Proposed Notice of Class Action is Deficient.

Should this Court certify any class in this case, it "must direct to class members the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Plaintiffs' proposed Notice of Class Action ("Proposed Notice"), however, falls far short of being the "best notice" practicable.

Class members certified under Rule 23(b)(3) class action "who can be identified through reasonable effort" must be sent notice of the suit, explaining in <u>clear, concise, and easily understood language</u>: (i) "the nature of the action"; (ii) the class definition; (iii) "the class claims, issues, or defenses"; (iv) class members' right to have their own attorneys

1  make appearances; (v) opt-out rights; (vi) the time and manner for opting-out; and (vii)
2  the res judicata effect of a judgment on class members. Fed. R. Civ. P. 23(c)(2)(B). The
3  current Rule 23(c)(2)(B) notice requirements are more detailed than what existed prior to
4  the 2003 amendment of Rule 23, but "[c]urrent practice often falls short of that standard."
5  *Wachtel v. Guardian Life Ins. Co. of Am.*, 453 F.3d 179, 184 (3d Cir. 2006). The
6  Advisory Committee Notes accompanying the 2003 amendments specifically refer to the
7  Federal Judicial Center's sample notice forms as a guide to conforming notices to the
8  revised Rule 23(c)(2)(B). *See* Fed. R. Civ. P. 23 advisory committee's notes, 2003
9  amendments ("Advisory Comm. Notes"); *Wachtel*, 453 F.3d at 185 n.6; *see also* Federal
10 Judicial Center, http://www.fjc.gov (follow "Class Action Notices Page" hyperlink) (last
11 visited Jan. 6, 2008) ("FJC Website"). Even though factual uncertainty and legal
12 complexity will make it difficult to create adequate notice, there is no provision to ignore
13 Rule 23(c)(2)(B)'s requirements because they are difficult to achieve. *See* Advisory
14 Comm. Notes.

15 The Proposed Notice is substantively deficient. First, the description of the nature
16 of the action is highly legalistic, not the clear, concise, and easily understood language
17 required to allow class members to make an informed decision about whether to opt-out of
18 the class. *See* Proposed Notice at 2. The Proposed Notice makes no effort to explain its
19 provisions in an understandable way. *See id.* The description of "class claims, issues or
20 defenses" is especially brief and uninformative. Plaintiffs only state the maximum
21 potential recovery and that "[i]t is anticipated that Defendants will assert certain defenses
22 and may also contest the amount of the allowed claim of each class member." *See*
23 Proposed Notice at 2. Plaintiffs make <u>no</u> mention of, much less put in layman's terms,
24 issues and defenses related to the single employer test, single site of employment,
25 minimum numbers of employees and layoffs per employment site, faltering company
26 exception, unforeseeable business circumstances exception, individual employee
27 exclusions, or the nature of a bankruptcy proceeding and its bearing on any claims.

28

Finally, the Proposed Notice cannot be the "best notice that is practicable" without accounting for modern communications technology. It requires little effort to create a class website or permit some form of electronic opt-out of the class. Currently, the only way to opt out is to return a form by certified mail, return receipt requested. *See* Proposed Notice at 4 (labeled page 3). A certified mail opt-out severely inconveniences class members wishing to opt-out, and Plaintiffs show no need for the opt-out to be by certified mail. Plaintiffs could easily create a web-based opt-out using a unique identification number printed on each notice. The Federal Judicial Center's sample notices suggest the appropriateness of having both a class website and a web-based opt-out form. *See* FJC Website.

The Proposed Notice is a pale specter of the full-bodied notice requirements envisioned when Rule 23(c)(2)(B) was amended in 2003. Putative class members are the ones who will suffer if defective notice is permitted, and they may be railroaded into a class action. The Court must not allow a class action, if certified, to proceed without a substantially improved form of notice and, therefore, should deny Plaintiffs' Motion.

## III. <u>CONCLUSION</u>

Class certification would be premature prior to plan confirmation, and prior to Plaintiffs giving proper notice of this action to unsecured creditors and the Litigation Trustee. Plaintiffs have not demonstratd that this case is appropriate for certification because they propose an unascertainable class, fail to offer representative plaintiffs that typically and adequately represent all subclasses, and ignore predominant individual issues. The proposed form of notice is radically deficient, at the expense of unnamed plaintiffs. Finally, a full evidentiary hearing on threshold issues is necessary before any attempt to certify a class. Therefore, Plaintiffs' Motion for Class Certification and Related Relief should be denied.

Respectfully submitted this 7th day of January, 2008.

99999.9JWS\SAFFERJM\TUX\ 483385

- 13 -

SNELL & WILMER L.L.P.


       /s/ Jonathan M. Saffer (022004)
Jeffrey Willis
Christopher H. Bayley
Jonathan Saffer
One South Church Avenue
Suite 1500
Tucson, AZ 85701-1630
*Attorneys for Defendant First Magnus Capital, Inc.*

Original of the foregoing filed and
a Copy mailed or electronically
served this 7th day of January, 2008 to:

Dennis J. Clancy
Raven & Awerkamp PC
PO Box 3017
Tucson, AZ 85702
dclancy@ravlaw.com

John R. Clemency
Greenberg Traurig LLP
2375 E. Camelback Road
Suite 700
Phoenix, AZ 85016
clemencyj@gtlaw.com

Rene S. Roupinian
Outten & Golden LLP
3 Park Avenue, 29th Floor
New York, NY 10016
rroupinian@outtengolden.com

David E. Schlesinger
Nichols Kaster and Anderson PLLP
80 S. Eighth St., #4600
Minneapolis, MN 55402
Schlesinger@nka.com

Michael D. Warner
Warner Stevens LLP
301 Commerce St., Suite 1700
Ft. Worth, TX 76102
mwarner@warnerstevens.com

99999.9JWS\SAFFERJM\TUX\ 483385

- 14 -

s/Clarrissa Palma

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
(520) 882-1200

99999.9JWS\SAFFERJM\TUX\ 483385